UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GENESIS HEALTHCARE, INC., et al., | § | |
| | § | |
| Debtors. | § | |
| _____ | § | |
| | § | |
| ESTATE OF ALMA BROWN, et al., | § | |
| | § | |
| Plaintiffs/Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-2963-B |
| | § | |
| 1 GLEN HILL ROAD OPERATIONS LLC, et al., | § | |
| | § | |
| Defendants/Appellees. | § | |
| _____ | § | |
| | § | |
| ALMEDA, et al., | § | |
| | § | |
| Plaintiffs/Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| 1 GLEN HILL ROAD OPERATIONS LLC, et al., | § | |
| | § | |
| Defendants/Appellees. | § | |
| _____ | § | |
| | § | |
| ADAM HOFFMAN, as Power of Attorney of RITA HOFFMAN, et al., | § | |
| | § | |
| Plaintiffs/Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| GENESIS HEALTHCARE, INC., et al., | § | |
| | § | |
| Defendants/Appellees. | § | |

-1-

## MEMORANDUM OPINION AND ORDER

Before the Court are three consolidated appeals challenging the "Order (I) Extending the Automatic Stay to the Non-Debtor Defendants and (II) Granting Related Relief" (the "Extend Stay Order") issued by the U.S. Bankruptcy Court for the Northern District of Texas on October 14, 2025. Though the three appeals involve common legal and factual questions, there are three separate sets of briefs corresponding to the three groups of appellants, such that some early orientation will save some later confusion.

The first group of appellants is headlined by the Estate of Alma Brown (hereinafter, the "Brown Appellants"). Briefing corresponding to the Brown Appellants' appeal—including an opening brief (Doc. 16), a response (Doc. 27), and a reply (Doc. 28)—all appear on this docket. The Brown Appellants moved to certify a direct appeal to the Fifth Circuit (Doc. 15), to which the Appellees responded (Doc. 22) and the Brown Appellants replied (Doc. 23). The motion to certify a direct appeal is **DENIED**.

The second group of appellants is headlined by Joanne Almeda (hereinafter, the "Almeda Appellants"). The Almeda Appellants' opening brief is on file under case number 3:25-CV-2964 as document number 8 (hereinafter cited as "Almeda Br."). For the Almeda Appellants' appeal, the response (Doc. 29) and reply (Doc. 32) were filed after consolidation and therefore appear on this docket.

The third group of appellants is headlined by Adam Hoffman (hereinafter, the "Hoffman Appellants"). The Hoffman Appellants' opening brief is on file under case number 3:25-CV-2965 as document number 5 (hereinafter cited as "Hoffman Br."). For the Hoffman Appellants' appeal, the response (Doc. 30) and reply (Doc. 38) were filed after consolidation and therefore appear on this

docket.

Ruling on the three appeals, the Court **VACATES** the Extend Stay Order and **REMANDS** to the Bankruptcy Court for further proceedings consistent with this opinion. A final judgment will follow but will not take effect for at least fourteen days, as required by Federal Rule of Bankruptcy Procedure ("FRBP") 8025(a).

## I.

## BACKGROUND

The debtors in this bankruptcy case (and Appellees on appeal) are Genesis Healthcare, Inc. and several affiliates (collectively, "Genesis"). Genesis operates healthcare facilities all over the country. *See* Doc. 27, Resp. Brown, 3. In July 2025, Genesis filed a petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code, which allows it to continue to operate while pursuing a plan of reorganization. *See id.* at 3–4.

Appellants purportedly hold healthcare negligence, personal injury, and wrongful death claims against both Genesis and Genesis affiliates that are not debtors in the bankruptcy case. *See* Doc. 16, Brown Br., 13; Almeda Br. at 4; Hoffman Br. at 4–6. The non-debtor affiliates against whom the Appellants hold claims include investors and equity holders of Genesis, the healthcare professionals who personally committed the wrongful acts, and the staffing service that placed personnel at Genesis facilities. *See* Doc. 16, Brown Br., 16–17; Almeda Br. at 4; Hoffman Br. at 5–6.

Upon Genesis's filing of its bankruptcy petition, all claims against the debtors—including Appellants' claims—were automatically stayed under 11 U.S.C. § 362. The automatic stay means that Appellants cannot proceed with their claims or collections against any debtor outside of bankruptcy

court.

This appeal involves the Bankruptcy Court's order on Genesis's motion to extend the § 362 stay to cover claims that it did not automatically cover (the "Extend Stay Motion").[1] *See* Doc. 27, Resp. Brown, 9. In September 2025, Genesis filed that motion seeking to stay claims against a set of non-debtors that included its employees, officers, and directors; certain independent physicians affiliated with Genesis; and others to whom Genesis would contractually owe indemnification, such as the landlords of facilities that Genesis rents. *See id.*

Appellants opposed the Extend Stay Motion. *See* Doc. 16-1, App. Brown Br., Vol. 1, at A258–74 (Brown Appellants' objection filed on September 26); Almeda Br. at 11 (September 29); Hoffman Br. at 8 (September 29). In their respective responses, the Brown and Almeda Appellants opposed the Extend Stay Motion on multiple grounds, including that Genesis had failed to commence an adversary proceeding as required by FRBP 7001. *See* Doc. 16-1, App. Brown Br., at A264–65; Almeda Br. at 11. The Hoffman Appellants objected but did not raise the lack of an adversary proceeding as an issue. *See* Hoffman Br. App. 5, at 8794–807.

Ten days after the Brown Appellants' response, Genesis replied to all objections. *See* Almeda Br. at 12–13. Genesis also filed a witness and exhibit list with 102 exhibits for the Bankruptcy Court's consideration. *See id.* at 13–14.

Two days after Genesis's reply, the Bankruptcy Court held an "all-day hearing" on the Extend Stay Motion. *See* Doc. 27, Resp. Brown, 10. At the hearing, the Bankruptcy Court permitted

---

[1] There is a separate appeal involving a distinct legal question about the automatic stay. In the Bankruptcy Court, the Brown and Almeda Appellants filed a motion to clarify whether the automatic stay—as far as it "automatically" goes, without extension—applied to their claims against non-debtors, and if it did, to lift the stay. *See* Doc. 16, Brown Br., 18; Almeda Br. at 5. The Bankruptcy Court issued an order regarding the automatic scope of the § 362 stay. *See* Doc. 16, Brown Br., 18. The Brown Appellants separately appealed that order, and that separate appeal is now pending before Judge Ada Brown. *See id.* at 18–19.

interested parties to present evidence and offer testimony. *See id.*

At the end of the hearing, the Bankruptcy Court concluded that Genesis had met its burden to show that a temporary extension of the stay was appropriate. *Id.* at 11. The Bankruptcy Court noted that there was an "identity of interests" between Genesis and the non-debtors to whom Genesis sought to extend the stay. *Id.* The Bankruptcy Court reasoned that not extending the stay could result in indemnity claims by the non-debtor affiliates against Genesis's bankruptcy estate. *See id.* The Bankruptcy Court also expressed concern that not extending the stay would lead to chaos and interfere with Genesis's sale of assets and reorganization. *See id.*

Six days after the hearing, the Bankruptcy Court granted the Extend Stay Motion and issued the Extend Stay Order. *See* Doc. 16-2, App. Brown Br., Vol. 2, at A290–93. Using defined terms from the Extend Stay Motion, the Bankruptcy Court extended the automatic stay

> to prohibit the continuation of the Lawsuits, the execution or enforcement of the Settlements, and the commencement of new lawsuits against the Non-Debtor Defendants or their affiliates during the pendency of these Chapter 11 Cases and until the effective date of any chapter 11 plan proposed by the Debtors.

*Id.* at A292; *see id.* at A290 n.2 ("Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion."). The Extend Stay Order also extended the automatic stay to "prohibit the severing of claims in the Lawsuits by the applicable Non-Bankruptcy Court that would allow claims against the Non-Debtor Defendants to proceed." *Id.* at A292. "For the avoidance of doubt," the Bankruptcy Court clarified that the extensions granted in the Extend Stay Order did not modify the "automatic" inclusion within the § 362 stay of claims that were already property of the debtor's estate. *See id.*

Appellants timely appealed to challenge the propriety of the Extend Stay Order.

## II.

## LEGAL STANDARDS

A.      *Certification of Direct Appeal*

In a bankruptcy appeal, a district court can tee up a direct appeal to the circuit-level court of appeals by certifying that any one of four circumstances exists. *See* 28 U.S.C. § 158(d)(2)(A). The four circumstances that could make direct appeal appropriate are: (1) the bankruptcy court's order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," § 158(d)(2)(A)(i); (2) the order "involves a matter of public importance," *id.*; (3) the order "involves a question of law requiring resolution of conflicting decisions," § 158(d)(2)(A)(ii); or (4) "an immediate appeal . . . may materially advance the progress of the case or proceeding in which the appeal is taken," § 158(d)(2)(A)(iii). *See In re Adkins*, 517 B.R. 698, 699 (Bankr. N.D. Tex. 2014) (treating § 158(d)(2)(A)'s three romanettes as four disjunctive conditions precedent). If a district court determines that any of the four circumstances is met, it "shall" so certify. *See* § 158(d)(2)(B). Upon certification, the court of appeals may authorize the direct appeal. *See* § 158(d)(2)(A).

B.      *Review of Bankruptcy Order*

When reviewing a bankruptcy court's order, a district court sits as an appellate court. *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 293 (5th Cir. 2013) (citation omitted). "Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *Id.* at 294 (citation omitted).

## III.

## ANALYSIS[2]

The Court first denies the Brown Appellants' motion to certify a direct appeal because none of the four circumstances for direct appeal exist. Second, the Court finds that the Bankruptcy Court erred by not following procedural requirements stated in Fifth Circuit precedent.

A.    *Certification is Denied Because None of the Four Direct-Review Circumstances Exist.*

The Brown Appellants move to certify a direct appeal based on the second and fourth circumstances under § 158(d)(2)(A): that the bankruptcy court's order involves a "matter of public importance" and that immediate appeal would "materially advance the progress of the case." Doc. 15, Mot. Certify, 16–18, 20–21. The Brown Appellants do not assert that there is an open question of law in the Fifth Circuit (which could trigger one of the other two direct-appeal circumstances), but they exchange arguments with Genesis over what the "controlling law" in the Fifth Circuit says. *See id.* at 18–20; Doc. 22, Resp. Mot. Certify, 10–13. The Court finds that there is no open question of law affecting this appeal and deals with the legal principles affecting the appeal in Section III.B below. That leaves the Brown Appellants' two main arguments for direct appeal: a matter of public importance and material advancement of the case. Neither circumstance exists.

1.    The Extend Stay Order Does Not Involve a Matter of Public Importance.

"'[P]ublic importance' is a relative thing, and it doesn't necessarily mean what a litigant considers to be important." *In re MPF Holding U.S. LLC*, 444 B.R. 719, 726 (Bankr. S.D. Tex. 2011)

---

[2] Under FRBP 8019(b), oral argument must be allowed unless the district judge "examines the briefs and record and determines that oral argument is unnecessary" for one of three reasons. Having examined the briefs and record, the Court determines that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* FRBP 8019(b)(3).

(quoting *In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009)). A leading treatise explains that the standard for a "matter of public importance" is a high bar that can be met (1) when deciding a legal question would "advance the cause of jurisprudence" to an unusually high degree or (2) when—regardless of the legal question's importance—the matter "could impact a large number of jobs or other vital interest in a community." 1 Collier on Bankruptcy ¶ 5.06[4][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2026) (footnotes and citations omitted).

The first route involves legal issues that "transcend the litigants," such as when the question involves the constitutionality of a bankruptcy code provision, applications of non-bankruptcy law in a bankruptcy case, or the special rules for transferring venue in bankruptcy cases. *See MPF Holding*, 444 B.R. at 726 (citation omitted). Under this route, decisions regarding nontrivial aspects of bankruptcy law that turn on "statutory interpretation and common law analysis instead of an in-depth discussion of complex constitutional issues that affect the public as a whole" do not meet the standard. *Id.* "[T]hat an issue is hotly contested and 'unqualifiedly important to the parties'" also will not meet the standard if the issue can be resolved by the district court without resort to complex constitutional analysis or the like. *See Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK), 2023 WL 4875915, at *3 (Bankr. D.N.J. July 31, 2023) (quoting *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 716 (Bankr. D. Del. 2016)).

Under the second route, a case may be important to the public as a practical matter. *See WestLB AG v. Kelley*, 514 B.R. 287, 293 (D. Minn. 2014) (citing *Jaffé v. Samsung Elecs. Co. (In re Qimonda AG)*, 470 B.R. 374, 386 (E.D. Va. 2012)). For example, a matter of practical public importance could exist where a delay in deciding imposes increasing potential costs to taxpayers. *See In re Pearl Res. LLC*, No. 20-31585, Adv. No. 20-3169, 2025 WL 2081580, at *3 (Bankr. S.D. Tex.

July 22, 2025). In contrast, "[a]n appeal that impacts only the parties, and not the public at large, is not a matter of public importance." *Qimonda*, 470 B.R. at 387 (citation omitted); *see, e.g.*, *In re Genter*, No. 16-34808-SGJ-7, 2020 WL 3129637, at *4 (N.D. Tex. June 11, 2020) (Brown, J.) (finding no matter of public importance where appellants asserted that they, but not anyone else, were stripped of rights).

To begin the analysis, the appeals here analytically fit better under the first route than the second because the case turns on failure to follow proper procedure laid out in Fifth Circuit precedent, as explained below in Section III.B of this opinion. That legal question does not require complex analysis because the controlling Fifth Circuit case speaks clearly on the issue and has never been called into question in this circuit. Thus, although the parties strongly disagree about what the law requires, there is no complicated legal question leading to a matter of public importance that would be best addressed directly by the Fifth Circuit.

The Brown Appellants' lead argument for direct appeal is that the Extend Stay Order strips them of their important right to sue non-debtors, which analytically fits under the second route but likewise does not meet the standard for a "matter of public importance." *See* Doc. 15, Mot. Certify, 16–18. The Brown Appellants have not argued, for example, that real individuals outside of this bankruptcy case might wish to sue non-debtors but are improperly barred from doing so under the Extend Stay Order. The Extend Stay Order, on the briefing before the Court, appears to impact only the litigants. Thus, the Court has no factual basis to determine that it involves major practical ramifications beyond the litigants.

To argue that the impact of the Extend Stay Order is broader, the Brown Appellants assert that it "will have future ramifications for tort victims and tortfeasors, and for bankruptcy and tort

jurisprudence generally." *Id.* at 16. But so does every legal precedent. Were the Court to accept this argument, every appeal would meet the standard for direct appeal because of the possibility that a future court might cite the district court's opinion. Direct appeal is meant to be the exception to the ordinary course of appealing first to the district court (or bankruptcy appellate panel, in the circuits that have them) then to the circuit-level court of appeals. The matters involved in this appeal, though important, do not directly impact the public in a way that justifies the exceptional recourse of direct appeal.

2.    Immediate Appeal Will Not Materially Advance the Case.

The Brown Appellants' argument that direct appeal will materially advance the case is essentially a prediction that this appeal will end up before the Fifth Circuit regardless of how this Court rules on the merits. *See id.* at 20–21. But movants for direct appeal "must demonstrate some reason *beyond* mere time saved by skipping the district court" because that sort of argument could always be used to bypass district court review. *See Whittaker*, 2023 WL 4875915, at *3. For material advancement, there must be "something '*extraordinary or urgent* about this situation that recommends departing from the standard appellate process.'" *Id.* (quoting *Stanziale v. Car-Ber Testing, Inc. (In re Conex Holdings)*, 534 B.R. 606, 611 (D. Del. 2015)). The Brown Appellants have not provided an extraordinary or urgent reason for bypassing this Court's review, and the Court finds none exists.

B.    *The Bankruptcy Court Failed to Follow Procedural Requirements Under Fifth Circuit Precedent.*

Turning to the merits, the Court first explains the applicable Fifth Circuit precedent and then explains how the Bankruptcy Court did not comply with that precedent.

1. <u>Fifth Circuit Precedent Allows Temporary Prohibitions of Actions Against Non-Debtors Only After Commencement of an Adversary Proceeding with Rigorous Procedural Protections.</u>

The outcome of these appeals is squarely controlled by *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995). In that case, the debtor sought the bankruptcy court's approval of a settlement that permanently prevented two nonparties from bringing certain claims against the debtor's insurer, which was not a debtor. *See id.* at 750–51. The Fifth Circuit addressed three questions, two of which are relevant here: (1) whether the bankruptcy court had the power to enter the injunction and (2) whether it followed the correct procedure.[3]

On the first relevant question, the Fifth Circuit addressed the scope of the bankruptcy court's power to enjoin actions against nondebtors. Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Fifth Circuit recognized that any § 105 injunction against a non-debtor could not, consistent with the bankruptcy code, be permanent. *See Zale*, 62 F.3d at 759–61. That holding has been the law in the Fifth Circuit for decades, despite only becoming recognized as correct by the Supreme Court two years ago. *See Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 132 F.4th 353, 358–59 (5th Cir. 2025) (other citations omitted) (citing *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024)) (explaining that Supreme Court's ruling in *Purdue Pharma* was law as recognized by multiple previous Fifth Circuit decisions, including *Zale*).

But "[t]he impropriety of a permanent injunction does not necessarily extend to a temporary

---

[3] The first question addressed by the Fifth Circuit—not relevant here—was the scope of the bankruptcy court's jurisdiction.

injunction of third-party actions." *Zale*, 62 F.3d at 761. A temporary injunction might be proper under "unusual circumstances," which include:

> 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.

*Id.* (citations omitted). To exercise its power to temporarily enjoin claims against non-debtors, the bankruptcy court needed to determine on the record that these or any other "unusual circumstances" exist. *See id.* The bankruptcy court had recognized that the insurer, if granted reprieve from suit, could provide "substantial consideration" to the estate and that doing so was a "key provision" for global settlement of all related claims. *See id.* at 762. That recognition on the record was sufficient to satisfy the "unusual circumstances" requirement, giving the bankruptcy court power to enter the temporary injunction under § 105. *Id.*

On the second relevant question, the Fifth Circuit addressed the procedural requirements for temporarily enjoining claims against non-debtors. First and foremost, the Fifth Circuit held that this sort of injunction required an adversary proceeding. *See id.* at 762–63. The debtor in *Zale* had asked the bankruptcy court to approve the settlement through a "contested matter," which is "generally designed for the adjudication of simple issues, often on an expedited basis." *See id.* at 762–63 (citations omitted). An adversary proceeding, in contrast, offers robust procedural protections through Part VII of the FRBP, which incorporates much of the Federal Rules of Civil Procedure ("FRCP") to make an adversary proceeding the equivalent of a "full-blown lawsuit[]." *Id.* at 762 (citations omitted). For example, an adversary proceeding must be commenced by filing a complaint exactly as under FRCP 3, *see* FRBP 7003; the complaint and a summons must be served following a slightly modified version of FRCP 4, *see* FRBP 7004; and the defendant can raise the same defenses

or file motions as allowed under FRCP 12, *see* FRBP 7012(b).

A party could waive the adversary proceeding requirement, but the Fifth Circuit in *Zale* ruled that the claimholders had not waived their rights to the procedural protections. *See Zale*, 62 F.3d at 763–64. Waiver occurs when the bankruptcy court provides all the procedural protections of an adversary proceeding, yet a party "knowingly fail[s] to litigate a Rule 7001 issue." *Id.* at 763 (citation omitted). By asking for more time to prepare for the hearing and stating that the matter was part of an adversary proceeding, the parties in *Zale* had sufficiently invoked their Rule 7001 rights and had not "knowingly failed to litigate." *See id.* at 763 n.50; *see also Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 273 (5th Cir. 2022) ("Waiver is the voluntary or intentional relinquishment of a known right." (citation omitted)). Moreover, the bankruptcy court had not offered a full opportunity for the parties opposing the settlement to raise issues and present testimony that it would have been required to permit at an adversary proceeding. *See id.* at 763–64. Even if the hearing feels adversarial in essence, "[c]alling it an adversary proceeding . . . does not make it one." *Id.* at 764 (citation omitted).

In addition, the bankruptcy court needed to have "conducted the proper analysis and made the requisite findings for entry of a preliminary injunction" before temporarily enjoining claims against non-debtors. *See id.* at 765 (citations omitted). The proper analysis requires finding:

> (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest.

*Id.* (citations omitted). A focus "only on the fairness of the settlement to the estate" was not enough. *Id.*

Because the movants in *Zale* "failed to follow the rules" by not initiating an adversary proceeding, they could not benefit from the bankruptcy court's mistake of excusing their lapse. *See id.* (citations omitted). Thus, the Fifth Circuit held that the bankruptcy court's failure to follow proper procedure was an independently sufficient reason (alternative to lack of jurisdiction and lack of power) to reverse the decision. *See id.*

    2.    <u>The Bankruptcy Court Did Not Follow the Proper Procedures for Extending the Stay.</u>

To begin, the bankruptcy court did not conduct an adversary proceeding. Although not labeled a "temporary injunction," the Extend Stay Order has the impact of temporarily preventing certain claims from being pursued against non-debtors. Under *Zale*, that type of relief requires an adversary proceeding. For the Brown and Almeda Appellants, no waiver occurred because they explicitly requested an adversary proceeding in their responses to the Extend Stay Motion. *See* Doc. 16-1, App. Brown Br., at A264–65; Almeda Br. at 11. Regardless of how robust the process was, the failure to provide an actual adversary proceeding after Appellants invoked their rights is, on its own, reversible error.

Moreover, in several respects, the procedure provided did not approximate that required by an adversary proceeding. For starters, under FRBP 7065, a preliminary injunction must adhere to the requirements laid out in FRCP 65(d):

    **(1)** ***Contents.*** Every order granting an injunction and every restraining order must:

        **(A)** state the reasons why it issued;

        **(B)** state its terms specifically; and

        **(C)** describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

    **(2)** ***Persons Bound.*** The order binds only the following who receive actual notice of

it by personal service or otherwise:

>    **(A)** the parties;

>    **(B)** the parties' officers, agents, servants, employees, and attorneys; and

>    **(C)** other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Here, the Extend Stay Order uses several defined terms from the Extend Stay Motion to "prohibit the continuation of the Lawsuits, the execution or enforcement of the Settlements, and the commencement of new lawsuits against the Non-Debtor Defendants or their affiliates." Doc. 16-2, App. Brown Br., Vol. 2, at A292; *see id.* at A290 n.2 ("Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion."). The Extend Stay Order thereby referred to another document in its core description of the acts restrained, directly contravening FRCP 65(d)(1)(C). The Extend Stay Order also extends the automatic stay—which, as stated in 11 U.S.C. § 362, applies to "all entities," not just those who received actual notice—to prohibit "the commencement of new lawsuits against" non-debtors. *Id.* at A292. Insofar as it purports to bind anyone who did not receive actual notice, the Extend Stay Order contravenes FRCP 65(d)(2).

In addition, the Bankruptcy Court appears to have improperly assessed the first and third preliminary injunction factors. The first factor requires a bankruptcy court to determine that the movant for the preliminary injunction is substantially likely to prevail on the merits. *See Zale*, 62 F.3d at 765. Outside of bankruptcy, "success on the merits" typically means securing a permanent version of the temporary relief. *See, e.g., United States v. Abbott*, 110 F.4th 700, 708 (5th Cir. 2024) (explaining that court could preliminarily require Texas to reposition structure only if United States, as plaintiff, would likely succeed in ultimately showing that structure's position violated federal law).

In bankruptcy cases, "success on the merits" cannot mean a permanent injunction restraining lawsuits against non-debtors because that relief is prohibited under Supreme Court and Fifth Circuit precedent, which the Bankruptcy Court appropriately recognized. *See* Doc. 27, Resp. Brown, 11 (quoting Bankruptcy Court at hearing: "This is temporary. This is not *Purdue*."). Success on the merits also cannot just mean success in obtaining the temporary injunction, as Genesis suggests. *See id.* at 24.

Somewhere between those two goalposts, "success on the merits"—be it the successful sale of assets, confirming a plan, or something else—needs to be defined, and the Bankruptcy Court must determine that it is substantially likely to be reached to issue a temporary injunction. *See, e.g.*, *In re Eng'g Recruiting Experts, LLC*, 673 B.R. 32, 38 (Bankr. M.D. Fla. 2025) ("[A] substantial likelihood of success on the merits . . . in the present context is the likelihood that the Debtor will complete the Plan payments and receive a discharge."); *see also* 2 Collier on Bankruptcy ¶ 105.03[1][a] ("If reorganization is at risk due to litigation or other pressures brought to bear on nondebtors, or if an individual debtor's fresh start is in jeopardy because of dubious actions against nondebtors, injunctions under section 105 are possible if the litigant can show likely success on the merits—such as the likelihood of a plan of reorganization or the successful defense of vexatious litigation.").

To argue that "success on the merits" just means success in obtaining the temporary injunction, Genesis cites *FiberTower Network Services Corp. v. FCC (In re FiberTower Network Services Corp.)*, 482 B.R. 169 (Bankr. N.D. Tex. 2012). *See* Doc. 27, Resp. Brown, 24. That case involved the FCC's attempt to terminate the debtors' spectrum licenses during the pendency of their bankruptcy case. *See FiberTower*, 482 B.R. at 177–78. Holding first that the debtors' license rights were part of the bankruptcy estate but were statutorily exempted from the § 362 stay, the bankruptcy court then

considered whether a temporary injunction against termination should be issued under § 105. *See id.* at 181–82. "The relevant 'merits' question," according to the bankruptcy court, was "whether this court is authorized and likely to grant the requested relief." *Id.* at 183. The bankruptcy court found the showing for "success on the merits" satisfied on a conclusion that the court "*may* enjoin [the FCC] from declaring the Licenses terminated." *Id.* at 187.

*FiberTower*'s statement of this rule made two mistakes. First, *FiberTower* is incorrect in suggesting that the first preliminary injunction factor is about whether the court *may* enjoin and that the other three factors are about whether it *should. See id.* at 187. That suggestion improperly conflates the first factor with the separate question of the bankruptcy court's authority. Second, *FiberTower* cannot be correct in saying that "success on the merits" means the court is "likely to grant the requested relief." *See id.* at 183. If whether you receive an injunction depends on the likelihood of you receiving one, the first factor is entirely circular and only the other three matter. Because of these two mistakes, the Bankruptcy Court on remand should not follow *FiberTower*'s version of the first factor.

On the third preliminary injunction factor, the Bankruptcy Court appears not to have properly considered the weight of threatened harm to those opposing the injunction in comparison to the weight of threatened injury to the movants. Contrary to Genesis's suggestion, "chastis[ing]" Appellants for their "self-interestedness" would not be appropriate. *See* Doc. 27, Resp. Brown, 25. The Bankruptcy Court did acknowledge Appellants' plight. *Id.* (quoting Bankruptcy Court at hearing: "I care about people who are hurt. I certainly understand the grief of relatives of people who died."). But the Bankruptcy Court also expressed concern that some wanted to "burn the house down." *Id.* The problem with accounting for that purported motive is that the claimants are entitled

to pursue their claims against non-debtors, regardless of what that means to the debtors. To properly weigh the burdens on each side, a court must consider the ongoing harm the claimants face while prevented from seeking relief to which they are entitled. The longer and/or more indefinite in duration the restraint is, the more burdensome it is to the claimants. Properly engaging in the balancing test is crucial to ensuring that a temporary injunction, if issued, is "mold[ed] . . . to meet the exigencies of the particular case," which might mean it is narrower in scope than what the movant requested. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam) (citation omitted). Insofar as the Bankruptcy Court's focus here was on Genesis's ability to continue to care for patients and pay employees, it only considered one side of the ledger. *See* Doc. 27, Resp. Brown, 25.

Genesis's lead argument against reversal is that the Bankruptcy Court did what was required under *Zale* by determining that Genesis and affiliated non-debtors had an "identity of interests." *See id.* at 17–18. As explained above, that determination is necessary to establish that the Bankruptcy Court had power to act, but it does not fulfill the procedural requirements laid out in *Zale*.

Genesis also argues that any procedural error was harmless. *See id.* at 30. In support, Genesis cites *United Student Aid Funds, Inc. v. Espinosa*, in which a student loan servicer received notice of a bankruptcy debtor's plan to discharge the student loan and, years later, complained for the first time about procedural deficiencies. *See* 559 U.S. 260, 263–66 (2010). The Supreme Court held that the errors were not severe enough to meet the high standard for voiding a final judgment under FRCP 60(b). *See id.* at 270–72. The high standard for voidness is not the measure here. Rather, this is a timely appeal from an adverse ruling on timely objections—exactly what the Supreme Court suggested the student loan servicer should have done. *See id.* at 272. Ordinary principles of appellate

review for legal error therefore apply.

The Hoffman Appellants, because they did not object to the procedure in the Bankruptcy Court, target the substance of the Extend Stay Order and say nothing about procedure. *See* Hoffman Br. at 13–23. The Court cannot, however, assess the substantive propriety of the Extend Stay Order when procedural safeguards, including adherence to the preliminary injunction factors, were not followed. The Brown and Almeda Appellants' appeals result in vacatur of the Extend Stay Order, and the Bankruptcy Court may, on remand, consider the Hoffman Appellants' substantive arguments in a proper proceeding if any party seeks an extension of the **§** 362 stay.

The Brown Appellants press a different reason for reversal: they contend that the Supreme Court's ruling in *Purdue Pharma* prohibits any relief that is not explicitly supported by a code provision, and relief for non-debtors is not supported by anything in the code. *See* Doc. 16, Brown Br., 27–32. As a matter of logic, it seems odd that a bankruptcy court could do something temporarily that it does not have the power to do permanently. But that dichotomy has been the law in the Fifth Circuit since at least *Zale*. *See Highland*, 132 F.4th at 358–59. The Supreme Court in *Purdue Pharma* "confin[ed] [itself] to the question presented" and held only that permanent injunctions, discharges, or releases (all interchangeable terms in this context) of non-debtors are unlawful without the affected claimants' consent. *See* 603 U.S. at 227. Nearly thirty years before, the Fifth Circuit in *Zale* held the same but, in the same section of the opinion, explicitly said that temporary injunctions were allowed in certain circumstances. *See* 62 F.3d at 761 ("The impropriety of a permanent injunction does not necessarily extend to a temporary injunction of third-party actions."). *Zale* therefore controls, and the Bankruptcy Court's order does not conflict with *Purdue Pharma* but must be vacated for failure to comply with *Zale*.

Although the Court has identified several errors in the procedure followed by the Bankruptcy Court, this opinion does not purport to describe every error or to prescribe every step of analysis the Bankruptcy Court must take if considering a similar temporary injunction on remand. If, on remand, the Bankruptcy Court considers temporarily enjoining claims against non-debtors, it should hew to the law set forth in *Zale* and the procedures for adversary proceedings provided in Part VII of the FRBP.

## IV.

## CONCLUSION

The Brown Appellants' motion to certify a direct appeal (Doc. 15) is **DENIED**. The Extend Stay Order is **VACATED**, and the Court **REMANDS** to the Bankruptcy Court for further proceedings consistent with this opinion. A final judgment will follow but will not become effective until after fourteen days from entry as prescribed by FRBP 8025(a).

**SO ORDERED.**

**SIGNED: May 1, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE